UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN D. MONTGOMERY,<br><br>                    Petitioner,<br><br>           v.<br><br>JOHNATHAN GAMP and THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,<br><br>                    Respondents. | Civil Action No. 21-16607 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

*Pro se* Petitioner Steven D. Montgomery ("Petitioner"), an individual currently confined at Southwoods State Prison in Bridgeton, New Jersey, filed the instant petition for a writ of habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons expressed below, the Court denies the Petition and denies a certificate of appealability.

I.   BACKGROUND[1]

The New Jersey Superior Court, Appellate Division provided the following factual summary:

> P.J. is the mother of [Petitioner's] minor daughter. The couple lived apart and were disputing custody of their child. [Petitioner] arranged to meet P.J. at a Passaic County diner to pick up his daughter for the day. After P.J. threatened over the telephone to keep [Petitioner] from seeing his daughter, [Petitioner] got out of his car, carrying bags containing a shotgun, a handgun, ammunition, handcuffs, masking tape, and a box cutter. He entered P.J.'s car, sat down, pointed the handgun at P.J., and told her to drive to her home "so that we can talk." The gun remained in [Petitioner's] lap pointed at P.J. for the approximately twenty-minute drive to her home. Their four-year-old daughter was in the back seat of the car.

---
[1] The factual background is taken from the record submitted by the parties; the facts relevant to the individual claims for relief are discussed in the analysis section of the Opinion.

> Once at the house, [Petitioner] ordered P.J. to go upstairs to her apartment and to leave their daughter alone in the car. While armed, [Petitioner] followed P.J. to the apartment, where he handcuffed her to the stove. He later moved P.J. to the bathroom, where he handcuffed her to a radiator. For approximately five and a half hours, P.J. remained captive while [Petitioner] threatened her repeatedly with his weapons. During the episode, [Petitioner] called P.J.'s mother, asking her to retrieve the child from the car. In a subsequent call, [Petitioner] told P.J.'s mother he was not going to allow P.J. to leave the apartment. [Petitioner] permitted P.J. to speak with her mother. P.J. asked her to call the police.
>
> When [Petitioner] heard police in the hallway of P.J.'s building, he opened the apartment door and stood at the top of the stairs with his loaded shotgun. He pointed the gun at officers as they approached the bottom of the stairs leading to P.J.'s apartment, causing them to retreat. Ultimately, officers communicating with [Petitioner] by telephone convinced him to release P.J. and surrender.

*State v. S.D.M.*, A-5483-17T4, 2019 WL 6170912 * 1 (N.J. Super Ct. App. Div. Nov. 20, 2019).[2]

Petitioner was charged with first-degree kidnapping, N.J.S.A. 2C:13-1(a) and N.J.S.A. 2C:13-1b(2) (Count One); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Counts Two and Three); second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f) (Count Four); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (Count Five); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (Count Six); third-degree terroristic threats, N.J.S.A. 2C:12-3(a) and N.J.S.A. 2C:12-3(b) (Count Seven); third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (Count Eight); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(9) (pointing shotgun at three police officers) (Counts Nine, Ten, and Eleven); third-degree unlawful possession of weapon (shotgun), N.J.S.A. 2C:39-5(c)(1) (Count Twelve); second-degree unlawful possession of a weapon (shotgun and handgun), N.J.S.A. 2C:39-5(c)(2) and N.J.S.A. 2C:39-5(b) (Counts Thirteen and Fourteen); fourth-degree possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (Count Fifteen); fourth-degree unlawful possession of a weapon or device (hollow-nosed bullets), N.J.S.A. 2C:39-3(f)(1) (Count Sixteen);

---

[2] The state court used the victim's and Petitioner's initials "to protect the identity of [Petitioner's] child." *S.D.M.*, 2019 WL 6170912 * 1, n.1.

third-degree possession of a weapon (box cutter) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (Count Seventeen); and fourth-degree possession of a weapon (box cutter) for an unlawful purpose, N.J.S.A. 2C:39-5(d) (Count Eighteen). *Id.*; *see* ECF No. 15-1.

On December 2, 2014, pursuant to a negotiated plea, Petitioner entered a guilty plea to first-degree kidnapping (Count One), one count of second-degree possession of a weapon for an unlawful purpose (Count Two), and one count of third-degree aggravated assault, which arose from pointing a firearm at a law enforcement officer (Count Nine). (*See* ECF Nos. 15-2 at 1; 15-3.) The State agreed to recommend an aggregate sentence of no more than fifteen years imprisonment. (*See* ECF No. 15-2 at 3.) On January 23, 2015, the Honorable Marilyn Clark, J.S.C. ("Judge Clark"), sentenced Petitioner to an aggregate prison term of fifteen years with an 85% period of parole ineligibility.[3] (*See* ECF No. 15-5 at 41:16 to 43:23; ECF No. 15-6 at 1.) Following his sentencing, Petitioner filed a motion for reconsideration, which was denied on April 9, 2015. (*See* ECF No. 15-7.)

Petitioner filed a direct appeal, raising an excessive sentence claim. (*Id.* at 2.) On December 15, 2015, an excessive sentencing panel affirmed Petitioner's sentence. (*See generally* ECF Nos. 15-8, 15-9.) The New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 15-12.)

Petitioner filed a post-conviction relief ("PCR") petition on August 25, 2017. (ECF No. 15-14.) On June 4, 2018, PCR counsel filed a supplemental brief. (ECF No. 15-15.) On June 28, 2018, the PCR court denied his petition. (ECF Nos. 15-16, 15-17.) Petitioner appealed, and the Appellate

---

[3] The court sentenced Petitioner to fifteen years in prison subject to the No Early Release Act (NERA), N.J.S.A. § 2C:43-7.2 on Count One. On Count Two, Petitioner received a ten-year prison term. Finally, on Count Nine, the court imposed a five-year prison term. Each of these Counts were to run concurrently. The court dismissed the remaining Counts. (*See* ECF No. 15-5 at 41:16 to 43:23; *see also* ECF No. 15-6 at 1.)

Division affirmed the denial. *S.D.M.*, 2019 WL 6170912. The New Jersey Supreme Court denied Petitioner's petition for certification. (ECF No. 15-24.)

Petitioner filed the instant Petition on August 29, 2021. (ECF No. 1.) Petitioner raises one ground for relief. (*Id.* at 6.) Respondents filed an answer (ECF No. 15), and Petitioner filed a reply (ECF No. 22).

II.   **STANDARDS OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 provides that the district court "shall entertain an application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based on the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent

4

and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (*quoting Renico*, 559 U.S. at 773). As to 28 U.S.C. § 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 574 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, to the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion"); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that

5

"[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

### III. ANALYSIS

In his sole ground for habeas relief, Petitioner argues that he was denied effective assistance of counsel due to trial counsel's performance during the sentencing phase. (*See* ECF No. 1 at 56.) Petitioner argues that during the sentencing phase, counsel "'relied' on the Pre-Sentence Report ("PSR") for [m]itigating [d]efense." (*Id.*) Petitioner alleges that counsel failed to contribute, investigate, or present mitigating evidence, stating only, "I don't have too much. I basically rely on the contents of the Pre-Sentence Report." (*Id.*)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland*, 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, his strategic choices are "virtually unchallengeable." *Gov't*

6

*of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less-than-complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 697).

When assessing an ineffective assistance of counsel claim in the federal habeas context, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was

unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 562 U.S. at 101). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 563 U.S. at 190). Federal habeas courts must "take a highly deferential look at counsel's performance" under *Strickland* "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

On collateral appeal, the Appellate Division denied Petitioner's claim, "affirm[ing] the June 18, 2018 [PCR court] order for the reasons stated by Judge Clark in her thorough and well-reasoned oral opinion."[4] *S.D.M.*, 2019 WL 6170912 at * 4. The Appellate Division noted the following:

> At sentencing, [Petitioner's] counsel highlighted his minimal prior criminal record, non-violent history, and the emotionally-charged nature of the child custody dispute. Counsel referred to a letter from [Petitioner's] grandmother describing his positive attributes, and called [Petitioner's] niece as a witness. She testified that [Petitioner's] family supported him.
>
> The court found aggravating factors: three, N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that [Petitioner] will commit another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of the [Petitioner's] prior criminal record and the seriousness of the offenses of which he has been convicted"); and nine, N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring [Petitioner] and others from violating the law"). The court found

---

[4] On collateral appeal, Petitioner raised the following claims to the Appellate Division:

(A) Plea counsel failed to vigorously argue multiple mitigating factors, and as such, the PCR Court erred in denying [Petitioner's] PCR [] without affording him an evidentiary hearing.

(B) Trial counsel failed to argue that [Petitioner] should be sentenced to one degree less based on the interest of justice and that the mitigating factors substantially outweigh the aggravating factors.

(C) The cumulative errors committed by trial counsel require post-conviction relief.

*S.D.M.*, 2019 WL 6170912 at * 3. Here, Petitioner argues only that plea counsel was ineffective for failing to argue mitigating factors and relying on the PSR. The Court only addresses the claim raised before it.

8

> mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) ("[Petitioner] has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense").
>
> The court found the aggravating factors "very substantially outweigh[ed]" the mitigating factor. When making that analysis, the court noted the significant and ongoing emotional trauma P.J. and the couple's daughter experienced as the result of [Petitioner's] criminal behavior, and emphasized the duration of the kidnapping. Consistent with the terms of the plea agreement, the court sentenced [Petitioner] to an aggregate fifteen-year period of incarceration, with an eighty-five-percent period of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

*Id.* at * 1-2. The Appellate Division noted that "[t]o succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by *Strickland* and adopted by our Supreme Court in [*State v.*] *Fritz*. 466 U.S. at 687; 105 N.J. [42,] 58 [(1984)]." *Id.* at * 4. The Appellate Division also summarized the PCR court's denial of this claim as follows:

> Judge Marilyn C. Clark, who presided at [Petitioner's] plea allocution and sentencing, heard his PCR petition. Judge Clark issued a comprehensive oral opinion in which she concluded defense counsel,
>
>> a most experienced and excellent attorney, obtained a plea agreement after much negotiation that benefitted [Petitioner], given the evidence in the case. He explained at length that he had done his best and he did not see any viable defenses. He had considered insanity and diminished capacity and had concluded correctly, in this [c]ourt's opinion, that these defenses would fail at trial.
>>
>> . . . . .
>>
>> [H]e presented the letter from [Petitioner's] grandmother, he presented the niece, who spoke, he cited the lack of criminal record, and he noted some history of employment . . . and the stress over [Petitioner's] daughter had resulted in his actions.
>>
>> . . . . .
>>
>> [Petitioner's counsel] provided [Petitioner] with outstanding representation from start to finish. Indeed, there is no doubt that in plea negotiations he stressed to the prosecutor the extreme stress the [Petitioner] had been under over the tensions related to his daughter and he succeeded in getting, given the crimes here, a most beneficial plea agreement. As noted, it ended up being [fifteen] years. [The

9

> Assistant Prosecutor] emphasized that she had initially been firmly opposed to going below [twenty] and [Petitioner's counsel], in his arguments to her during negotiations, persuaded her to go to [fifteen]. There is . . . absolutely no basis for a finding of ineffective assistance of counsel.
>
> In addition, Judge Clark found "there was no basis for [Petitioner's counsel] to have argued that the first-degree kidnapping should be sentenced one degree lower. As noted, [the court] found that the aggravating factors qualitatively substantially outweigh the mitigating factors." On June 28, 2018, Judge Clark entered an order denying [Petitioner's] PCR petition without an evidentiary hearing.

*Id.* at * 2-3.

The Appellate Division applied the correct standard under *Strickland* in assessing Petitioner's claim. Therefore, this Court must apply AEDPA deference to the state court's decision unless it was contrary to or an unreasonable application of *Strickland*. *Branch v. Sweeney*, 758 F.3d 226, 233 (3d Cir. 2014). The state court found that trial counsel was not ineffective because his advice that Petitioner should not testify was sound, so this Court must be "doubly deferential" on habeas review. *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) ("When the claim at issue is for ineffective assistance of counsel, AEDPA review is 'doubly deferential,' because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' In such circumstances, federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id*. (quoting *Pinholster*, 563 U.S. at 190, *Burt v. Titlow*, 571 U.S. 12, 16 (2013)).

The record supports the Appellate Division's denial of this claim. Petitioner's contention that plea counsel failed to present mitigating evidence at sentencing, relying only on the PSR, lacks support in the record. Counsel presented Petitioner's niece as a witness at his sentencing. (ECF No. 15-5 at 6:2 to 7:21.) Petitioner's niece submitted to the sentencing court that Petitioner is a "wonderful, caring, loving person[,]" who is in this position only because "he was so passionate about his daughter and the love that he has for [her]." (*Id.* at 7:3-8.) A letter from Petitioner's

10

grandmother was also presented to the sentencing court. (*Id.* at 5:7-18.) While it is accurate that counsel stated that he did not "have too much" and he would "basically rely on the contents of the presence report[,]" counsel went on to make further argument on Petitioner's behalf. (*Id.* at 7:24 to 8:1.) Counsel stated that Petitioner's grandmother and niece explained their feeling about Petitioner after having known him for 28 years. Counsel noted that Petitioner's "criminal record is basically a disorderly persons offense that occurred 11 years ago." (*Id.* at 8:11-13.) Counsel also argued the following:

> I think Your Honor can see, basically, he's 28 years old, not a violent person. Unfortunately, this particular situation regarding his family, his former girlfriend, and his daughter was a very emotionally charged situation. It wasn't just two strangers on the street who go into a fight and as a result of that he did what he did. [A]nd realizes that it was a very, very improper thing to do. So that's where we are[,] and I would ask Your Honor to take all of these factors into consideration in regard to the sentence.

(*Id.* at 8:14-25.) In sentencing Petitioner, the sentencing court found that "the aggravating factors very substantially outweigh the mitigating factors." (*Id.* at 41:4-6.)

Thus, the record supports the Appellate Division's rejection of Petitioner's claim for ineffective assistance of counsel. Defense counsel clearly asked the sentencing court to consider the two witness character statements, Petitioner's lack of criminal history, and the emotionally charged custody situation. Here, the state court's application of *Strickland* was neither contrary to nor involved an unreasonable application of *Strickland* and its progeny. *See Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation omitted) (when the *Strickland* analysis is combined with 28 U.S.C. § 2254(d), federal habeas courts' analysis is "doubly" deferential to both the state court and the defense counsel). Petitioner is denied habeas relief.

## IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a proceeding under 28 U.S.C. § 2254 unless he has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court will deny Petitioner a certificate of appealability.

V.      **CONCLUSION**

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is **DENIED**, and a certificate of appealability shall not issue. An appropriate order will be entered.

**DATED**:  August 20, 2024

                                                                                      _____
                                                                                      **JULIEN XAVIER NEALS**
                                                                                      **United States District Judge**